**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIRSAD HAJDAREVIC,** | : | **Civil No.  3:24-cv-00636** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security[1]** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM OPINION</u>**

## I.    <u>Introduction</u>

The Supreme Court has underscored for us the limited scope of our substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts,

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The plaintiff in this case, Mirsad Hajdarevic, suffered a work-related injury in December 2019 which resulted in an array of impairments to his lumbar spine, right hand and elbow, and left knee. The longitudinal medical evidence was mixed and equivocal, showing relatively benign examination findings and conservative treatment but ongoing complaints of chronic pain, and the medical opinion evidence regarding the disabling effects of these impairments was split, with two examining sources, including consultative examiner Dr. Ahmed Kneifati, finding Hajdarevic would only be capable of sedentary or less work, and the two State agency experts and one examining physician, Dr. Baker, opining that he was capable of light work with some postural limitations. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Hajdarevic could perform a range of light work with a modified sit/stand option and certain postural limitations. Based on this residual functional capacity assessment (RFC), the ALJ concluded other work

existed in the national economy that Hajdarevic could perform and so he had not met the exacting standard of disability set by law.

Hajdarevic now appeals this decision, arguing that the ALJ failed to properly evaluate the opinion of consultative examiner Dr. Kneifati and that the ALJ committed various errors in evaluating the disabling effects of his impairments. However, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

### A. Background

The administrative record of the plaintiff's disability application reveals the following essential facts: On July 30, 2020, Mirsad Hajdarevic filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 9, 2019. (Tr. 147). According to Hajdarevic, he was completely disabled due to the combined effects of chronic back pain, bulging disc in lower back due to work-related injury, and right-hand fracture due to work-related

injury. (Tr. 105). Hajdarevic was born on September 2, 1968, and was fifty-one years old at the time of the alleged onset of his disability, making him an individual closely approaching advanced age under the Commissioner's regulations. (Tr. 104). He has a high school education and worked for over fifteen years as a crane operator for Frog Switch & Manufacturing Company in Carlisle, Pennsylvania. (Tr. 410).

The plaintiff's disability application was denied at the administrative and hearing levels before being remanded by the Appeals Council on September 26, 2022. (Tr. 167-72). The ALJ then conducted a rehearing on September 21, 2021, after which he again issued a decision denying Hajdarevic's disability claim.

### B. **The Clinical Record**

The longitudinal medical record in this case demonstrates that Hajdarevic's orthopedic impairments and chronic pain resulted from a work-related injury he sustained in December 2019 when he fell from a ladder. (Tr. 552). He reported to Pinnacle Health All Better Care one week later, on December 16, 2019, complaining of pain in his left elbow, right thumb, left knee, and his middle and lower back. (Id.) X-rays were negative for any fracture of dislocation of the hand, knee, or spine, (Tr. 555-57), and the examination revealed a normal gait but tenderness, swelling, and muscle tightness in the lumbar spine, limited range of motion with pain, tenderness and swelling in the elbow, left knee tenderness but full range of motion with some

4

discomfort. (Tr. 553). He was diagnosed with dorsalgia, unspecified (back pain), left knee pain, and a right thumb sprain and prescribed prednisone and a thumb splint. (Tr. 554). Physical therapy was recommended. (Id.) At a follow up appointment one week later he continued to report right hand pain and ongoing back pain, but the examination showed he was able to bear weight on his left knee and walk without difficulty or antalgia despite some left knee tenderness. (Tr. 561). He was referred for physical therapy and prescribed a muscle relaxer for his back. (Tr. 562).

Hajdarevic completed a course of fifty-five physical therapy treatments between January and May 2020. (Tr. 548-71, 665-898). Although he consistently reported ongoing pain in his lower back and left knee, he made progress in increasing his flexibility and lifting tolerance. (Tr. 592, 616). The goal was to get Hajdarevic back to work at his moderate-to-heavy exertion level job as a crane operator, since it was repeatedly noted that, although he had been approved for light work, he had been unable to return to work because his employer did not have light duty work and there were layoffs due to COVID-19. (Tr. 563, 567, 594, 960, 980). His initial evaluation showed decreased range of motion in his spine, lower back pain with radicular symptoms in the right buttock, left knee pain and decreased strength, and stated that he was unable to carry, walk, stand, or sit for prolonged periods, lift overhead, lift objects from the floor, and push/pull. (Tr. 563).

5

On January 15, 2020, physical therapy notes stated he was showing great improvements in his lumbar spine range of motion and reported that his lower back pain had decreased but that he was still having increased pain with sitting and driving and was having knee pain. (Tr. 571). By the end of January 2020, physical therapy notes showed improvement in his lower back and that his rehab potential was excellent but that he was still not meeting minimal job requirements. (Tr. 592). However, it was also noted that Hajdarevic was "observed performing exercises appropriately, well-paced and without indication of pain when clinician was out of view, and when in view would alter form and display indications of pain." (Tr. 589).

On February 7, 2020, orthopedist Dr. David Baker conducted an independent medical evaluation of Hajdarevic for the purposes of his workers compensation claim. (Tr. 595-600). Dr. Baker reviewed the X-rays of his hand, spine, and knee and noted early osteoarthritis of the right thumb CMC joint and slight subluxation, but that the lumbar spine and left knee X-rays were appropriate for Hajdarevic's age. (Tr. 596). His examination revealed no deformity and full range of motion of the right elbow, but tenderness at lateral epicondyle and pain with extension and slight swelling of the thumb at the CMC joint. (Tr. 597). Dr. Baker observed full range of motion in the lower extremities and a benign left knee examination with no effusion or synovitis. (Id.) His low back exam showed no visible or palpable deformity but

6

altered sensation in an S1 distribution increased with supine straight leg raise. (Id.)
Dr. Baker's impression was mild lateral epicondylitis of the right elbow, which he
believed would subside with time, mild right thumb CMC joint arthritis aggravation,
and low back pain with left leg radicular nerve pain in an S1 distribution. (Tr. 598).
He noted that Hajdarevic's right upper extremity symptoms were mild, and his left
knee examination was normal, and his pain problems were primarily in his lower
back. (Id.) He recommended Hajdarevic undergo an MRI for suspected
radiculopathy. (Id.)

By the end of February 2020 Hajdarevic's physical therapy records noted
continued improvement in range of motion and strength, and that he could lift and
carry twenty pounds occasionally, but had not yet met minimal job requirements.
(Tr. 616). Physical therapist Brandon Pruznak stated on March 11, 2020, that
Hajdarevic would benefit from transitioning to a work conditioning program in order
to meet the minimal job requirements and improve endurance toward job related
activities, but that his rehabilitation potential was excellent. (Tr. 630).

At the end of March 2020, Hajdarevic was referred to orthopedist Dr. Ronald
Lippe for an MRI of his lumbar spine, which showed minimal degenerative change
of the spine but no herniation or signs of neurologic compromise. (Tr. 972, 979). Dr.
Lippe again noted that Hajdarevic had been given "light duty" but that he was unable

to do it since there was no light duty where he worked and there were layoffs due to COVID-19. (Tr. 980). He also stated, "I have to admit I am not sure I am going to be able to get this gentleman back to work." (Id.) At a follow-up appointment, Hajdarevic continued to report low back pain at a level of six out of ten radiating to the buttock and occasionally to his lower extremity, stating bending and twisting was very difficult for him and sometimes the pain was so severe he could not do routine daily activities. (Tr. 979). Dr. Lippe told Hajdarevic there were "no easy cures" for his condition and offered him another course of physical therapy. (Id.)

By May 2020, Hajdarevic's physical therapy records noted he was continuing to improve on functional activities and had progressed to lifting twenty pounds without symptoms in his right lower extremities. (Tr. 655). His doctor recommended he be discharged from physical therapy in mid-May 2020 after fifty-five treatment sessions, due to a plateau in his progress. (Tr. 664). His discharge prognosis was noted as "excellent" despite noted limitations in his ability to sit, stand, lift, push/pull, bend, and twist. (Tr. 663-64). Following his discharge from physical therapy, Dr. Lippe again noted he did not have much else to offer him in terms of pain relief for his back and he was referred for a lumbar epidural steroid injection to his lumbar spine. (Tr. 954, 956-57). He reported to OIP again at the end of May complaining of right hand and elbow pain and received a corticosteroid injection to

8

the right elbow and wrist. (Tr. 960). He noted again at the time that he was performing "light duty" at work but that no light duty was currently available due to COVID-19. (Id.) He received another lumbar epidural steroid injection on June 16, 2020. (Tr. 958). He stated that the previous injection helped with tingling in his abdomen but his back and legs still hurt. (Id.) He was given a prescription for Tizanidine and stated he wanted to be referred for medication management if this injection did not work. (Id.)

Dr. Baker conducted another IME of Hajdarevic on August 17, 2020. At the examination, Hajdarevic admitted that he was significantly better than he was in February both with respect to his right upper extremity and his low back. (Tr. 1281). Dr. Baker noted that several of the previously identified impairments, including lateral epicondylitis of the right elbow, De Quervain's, which he initially thought was CMC joint arthritis, and left knee pain. (Id.) The examination revealed some tenderness in his elbow and thumb, and noted a slight leg raise produced symptoms below the knee including tingling in the foot in roughly an S1 distribution but noted normal gait and no palpable or visible deformity in the back. (Id.) Dr. Baker stated:

> Also, it is my opinion that Mr. Hajdarevic attend a work hardening program. He is used to physical work and his current state of inactivity is not conductive to rapid recovery.
>
> . . .

> Unfortunately, light duty is not available from Mr. Hajdarevic's employer at Frog Switch. Having his return to the workplace as soon as possible in a modified capacity is, in my opinion, the most important factor in facilitating a full functional recovery.
>
> I remain convinced that Mr. Hajdarevic will eventually obtain a full functional recovery with minimal measurable impairment. His lumbar spine does show some abnormalities, however, these are not out of line with the abnormalities we see in asymptomatic patients in his age group.

(Tr. 1283).

Hajdarevic sought a second opinion of his orthopedic impairments at Arlington Orthopedics with Dr. John Grandrimo in fall 2020. A September 2020 examination showed tenderness in the right elbow but no swelling, ecchymosis, or deformity, full range of motion, no elbow instability, normal sensory, motor, and vascular exam, shoulder and wrist exam within normal limits, minimal tenderness to palpation, and good sensation. (Tr. 1050). Dr. Grandrimo administered another cortisone injection to his right wrist and prescribed Mobic. (Id.) Dr. Grandrimo stated that, based upon the IME of Dr. Baker and notes of other providers, he believed Hajdarevic had probably reached maximum medical improvement and could return to work with normal restrictions. (Id.) As to his lumbar spine, Dr. Grandrimo's examination on October 7, 2020, showed some decreased range of motion, but that he was able to walk on his heels and toes, intact coordination, no

paravertebral spasms in the back or tenderness to palpation, and full strength in his lower extremities. (Tr. 1054). X-rays of his lumbar spine showed mild degenerative changes and mild straightening of normal lordosis of the lumbar spine. (Id.) Dr. Grandrimo determined that Hajdarevic was not a surgical candidate and recommended he follow up with pain management. (Tr. 1055).

Thus, up to this point, Hajdarevic's treating providers had determined that his primary issue was pain in his lumbar spine due to his work-related injury, but the objective findings were mild, and the overall consensus was that he retained the capacity to perform work related duties at a reduced level of light work.

On November 23, 2020, Dr. Ahmed Kneifati conducted a consultative orthopedic examination of Hajdarevic. (Tr. 1019-22). Hajdarevic reported pain in his lumbar spine radiating to both legs with numbness since 2019 at a level of seven out of ten, exacerbated by sitting, bending, lifting, walking, changes in temperature, and humidity. (Tr. 1019). He also reported left knee pain and right elbow pain. (Id.) He reported being able to shower and dress as needed. (Tr. 1020). Dr. Kneifati's examination revealed a normal gait and station with no assistive device, that he was able to tandem walk with some difficulty, needed no help getting on and off the exam table, and was able to rise from a chair without difficulty. (Id.) He had difficulty standing on heels and toes due to back pain and he could not walk on his heels and

toes and his squat was limited to thirty percent. (Id.) Dr. Kneifati's examination revealed intact hand and finger dexterity, stable joints and full strength and sensation in upper extremities with no joint redness, swelling, or effusion but some tenderness in the right elbow. (Tr. 1021). He noted some moderate paraspinal spasm and tenderness in the lumbar spine but a negative slight leg raise bilaterally and no trigger points. (Id.) There was some tenderness in the left knee but no swelling or effusion and full strength, sensation, and reflexes. (Id.) Wrist, hand, shoulder, elbow, hip, and cervical spine range of motion was within normal limits, but he had reduced left knee flexion/extension and reduced flexion/extension in the lumbar spine (Tr. 1032-35). Dr. Kneifati's diagnoses were lumbar pain, radicular pain bilateral, left knee pain, lateral epicondylitis right elbow, De Quervain's syndrome, distal radius tendonitis with pain distal radius and base of thumb, and poor balance. (Tr. 1022).

Hajdarevic received another cortisone injection to his wrist on December 1, 2020, and it was recommended he start physical therapy. (Tr. 1059-60). He was seen by another orthopedist, Dr. Beutler, for a third surgical opinion on March 10, 2021. The examination revealed no abnormal findings with range of motion or stability in his upper or lower extremities, no spine tenderness, no paraspinal muscle tightness or tenderness, normal range of motion in the neck with no pain, normal strength in upper extremities, normal gait and posture, but some pain and decreased range of

12

motion in the lumbar spine and give-way weakness of testing of hip flexion. (Tr. 1078). Dr. Beutler agreed with the previous two orthopedists that there was no indication for surgical intervention and recommended continued conservative management course. (Tr. 1079). He was referred for physiatry treatment. (Id.)

Hajdarevic continued with pain management and physical therapy throughout 2021. He expressed frustration and sadness about being unable to return to work and normal activities. (Tr. 1089). He was discharged from physical therapy in July 2021 and instructed to continue home exercises. (Tr. 1213-15). An August 2021 EMG was normal with no evidence of neuropathy. (Tr. 1263). At his annual physical examination on August 20, 2021, he noted he was still struggling with low back pain and a recurrence of right elbow and wrist pain and was depressed due to being unable to work. (Tr. 1255). His primary care provider concluded that his back pain would be a lifelong struggle as he was not a surgical candidate and that his symptoms would wax and wane. (Tr. 1258). It was recommended he continue with his home exercise program and treat with medications, and he was referred back to orthopedics. (Id.) X-rays of his elbow on August 31, 2021, showed no evidence of fractures or osseous lesion and it was noted he had full range of motion and normal motor function and sensation in his upper extremities, despite some tenderness to palpation in his elbow,

and ambulated with no assistive devices or immobilization. (Tr. 1311-13). He received more steroid injections on August 31, 2021. (Id.)

### C. **Hajdarevic's Subjective Complaints**

Hajdarevic completed two function reports to accompany his disability application – one in September 2020 and one in March 2021. In September 2020, he reported being unable to stand more than four hours a day and was restricted to lifting up to thirty pounds and no carrying. (Tr. 423). He stated that he was unable to sit, stand, or lay for extended periods, could walk about one mild per day, and that his wife had taken on all of the household duties and helped with his personal care. (Tr. 423-431). He reported constant pain in his low back, right hand and elbow, and left knee spreading through his legs and low body. (Tr. 431). In March 2021, he reported that he was unable to stand longer than half an hour at one time, unable to sit longer than one hour at one time without adjusting his posture, and was unable to lift, push, or pull more than fifteen pounds. (Tr. 467). He stated that he could drive short distances but that his wife did chores, prepared meals, and assisted with his personal care. (Tr. 468-69).

At the hearing on February 21, 2023, Hajdarevic testified that he cannot climb stairs, can lift maybe a gallon of milk with his left hand but cannot grasp anything with his right hand, can sit and stand for thirty minutes at a time and walk slowly

200 yards before resting and cannot climb stairs. (Tr. 83-87). He again reported that he could drive short distances but that his wife did all the chores and grocery shopping. (Tr. 90-91).

### D. The Expert Opinion Evidence

Given this clinical picture, and Hajdarevic's activities of daily living, two State agency consultants and a series of treating and examining physicians opined regarding whether Hajdarevic's physical impairments were disabling. The two State agency consultants and examining consultant Dr. Baker all concluded that Hajdarevic was capable of light work.

On January 19, 2021, State agency medical consultant Dr. Hong Sik Park completed an RFC assessment of Hajdarevic after reviewing the relevant medical evidence and concluded he was capable of performing light work with postural limitations. (Tr. 114-20). Specifically, Dr. Park concluded that Hajdarevic could occasionally lift and/or carry twenty pounds and could frequently lift and/or carry ten pounds, could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday, could occasionally perform all postural activities, but could only frequently handle with his right hand, and should avoid concentrated exposure to extreme cold, vibrations, and hazards such as machinery and heights. (Tr. 114-16).

15

On reconsideration, on April 23, 2021, State agency expert Dr. Ethel Marie Hooper, similarly opined that Hajdarevic was capable of light work despite his impairments. Dr. Hooper specified the same limitations as Dr. Park in lifting, carrying, standing, walking, and sitting, and similarly opined that he would be limited to occasional postural maneuvers, except he could never climb ladders, ropes or scaffolds. (Tr. 134-35). Dr. Hooper opined that he had no environmental limitations except avoiding concentrated exposure to hazards such as machinery and heights. (Tr. 136).

Based upon his February 7, 2020, examination of Hajdarevic and review of his medical history, orthopedist Dr. David Baker completed an independent medical evaluation. (Tr. 595-601). Dr. Baker opined, based upon his examination, that Hajdarevic could lift/carry twenty pounds maximum and frequently ten pounds, could stand three to five hours, and sit, walk, and drive one to three hours in an eight-hour workday, could repetitively grasp, pull, and manipulate with both hands and could occasionally perform postural activities, except that he could frequently use foot controls. (Tr. 601). Dr. Baker conducted another evaluation on August 19, 2020, indicating that a number of Hajdarevic's impairments had resolved over the prior months. The physical capabilities checklist was less restrictive than his February 2020 opinion, concluding that Hajdarevic could lift/carry thirty pounds maximum

16

and frequently lift/carry up to ten pounds, could stand, sit, and walk three to five hours in an eight-hour workday and drive one to three hours in an eight-hour workday, could repetitively grasp, push/pull, and manipulate with both hands, and could occasionally bend, squat, climb, kneel, and crawl, but could frequently reach above the shoulder and use foot controls. (Tr. 1285).

These opinions were contrasted against the much more restrictive opinions of consultative examiner Dr. Kneifati and treating provider PA-C Genga who both opined that he would be restricted to less than sedentary work.[2] Following his

---

[2] The ALJ also considered many temporally specific notes and recommendations from Hajdarevic's treating providers regarding return-to-work restrictions. For example, on December 16, 2019, shortly after Hajdarevic's work-related injury, Whitney Amato, PA-C, completed a work status form which stated he could return to work on Monday, December 16, 2019, but was limited to no driving/operating heavy machinery, standing only as tolerated, and no twisting, bending, stooping at the waist, lifting, overhead work, or pushing/pulling. (Tr. 558). On December 23, 2019, another PA from All Better Care stated he could return to work that day with similar restrictions and must wear a right wrist split at all times. (Tr. 1293). The same work restrictions were recommended at a follow-up on January 6, 2020. (Tr. 1292). On January 20, 2020, Dr. Ryan Crim from All Better Care recommended Hajdarevic wear a right elbow strap at all times, and be limited to occasional twisting, bending, stooping, and overhead work, but no lifting, no pushing/pulling, and no driving or operating heavy machinery and standing as tolerated. (Tr. 1291). These restrictions were reiterated by Dr. Carol Robinson at a follow-up on February 3, 2020, (Tr. 1290), and by Dr. Ross Contino on February 17, 2020. (Tr. 1289). In March 2020, Hajdarevic's treating physical therapist completed an injured worker functional examination and stated Hajdarevic had difficulty completing job requirements and had not met the minimal job requirements for lifting and carrying. (Tr. 630). He opined that he would benefit from transitioning to work conditioning in order to meet

consultative examination of the plaintiff, Dr. Ahmed Kneifati completed a medical source statement of Hajdarevic's ability to perform work-related activities on November 23, 2020. (Tr. 1026-37). Dr. Kneifati opined that Hajdarevic could occasionally lift and carry up to ten pounds, but never more, due to decreased range of motion in his knee and spine, poor balance, and tennis elbow. (Tr. 1026). He further opined that the plaintiff could sit for two hours at a time and five hours total, stand for thirty minutes at one time and three hours total, and walk for fifteen minutes at one time and two hours total in an eight-hour workday due to these same findings. (Tr. 1027). According to Dr. Kneifati, Hajdarevic could continuously reach with both hands, but could only frequently handle, finger, feel, and push/pull with his right hand, and could frequently operate foot controls with his right foot but only occasionally with is left foot. (Tr. 1028). He stated that the plaintiff could occasionally perform all postural activities except that he could never climb ladders or scaffolds. (Tr. 1029). He also found Hajdarevic had environmental limitations in that he could never be exposed to unprotected heights and could only occasionally

_____

minimal job requirements and improve endurance toward job-related activities. (Id.) On March 30, 2020 and April 1, 2020 orthopedist Dr. Ronald Lippe completed forms stating Hajdarevic could return to work with restrictions including no pushing, pulling, bending, twisting, driving machinery and no lifting restriction. (Tr. 1288). On May 13, 2020, Dr. Lippe opined that Hajdarevic could not return to work, with no additional explanation. (Tr. 1286).

operate a motor vehicle, be exposed to humidity and wetness, extreme cold, extreme heat, and moving mechanical parts. (Tr. 1030). Dr. Kneifati stated that Hajdarevic could not walk a block at a reasonable pace on rough or uneven surfaces or use standard public transportation, but could care for his personal hygiene, prepare simple meals, travel without a companion, and perform activities like shopping. (Tr. 1031).

On August 23, 2021, PA-C Genga completed an RFC questionnaire at the request of the plaintiff. PA-C Genga opined that Hajdarevic could frequently lift and carry up to ten pounds, occasionally ten to twenty pounds, and rarely twenty to fifty pounds; could constantly look down, turn his head right or left, look up, and hold his head in a statis position; could sit for ten to fifteen minutes at one time and one hour total, stand for five to ten minutes and one hour total, and walk for ten minutes at one time and one hour total in an eight-hour work day. (Tr. 1247-48). PA-C Genga further opined that the plaintiff would need to take unscheduled breaks every hour during the day and would likely be absent from work more than four days per month. (Tr. 1248-49). She opined that Hajdarevic could occasionally climb stairs, balance, and bend at the waist, but rarely twist, stoop, crouch, or climb ladders and that he had no significant limitations with reaching, handling, or fingering. (Tr. 1248-49).

PA-C Genga elaborated that, due to his chronic back pain, the plaintiff could not lift objects or sit or stand for extended periods of time. (Tr. 1249).

It was against this backdrop that Hajdarevic's disability claim came to be heard by the ALJ.

### E. **The ALJ Decision**

On February 21, 2023, the ALJ conducted a second hearing in Hajdarevic's case, at which the plaintiff and a vocational expert testified. (Tr. 64-103). Following the hearing, on May 1, 2023, the ALJ issued a decision denying this claim. (Tr. 7-36). In that decision, the ALJ first concluded that Hajdarevic met the insured requirements of the Act through June 30, 2025, and had not engaged in substantial gainful activity since December 13, 2019, the alleged onset date. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Hajdarevic had the following severe impairments: spine disorders (left and right neural foraminal stenosis, disc herniation); degenerative disc disease; De Quervain's disease; lateral epicondylitis, right elbow; right thumb CMC joint arthritis aggravation; and obesity. (Tr. 13).

At Step 3, the ALJ determined that Hajdarevic did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. Between Steps 3 and 4, the ALJ then fashioned a

residual functional capacity ("RFC") for the plaintiff which considered all of

Hajdarevic's impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), keeping in mind that the claimant is a left hand dominant individual, except the claimant can lift twenty pounds occasionally and ten pounds frequently; the claimant can carry twenty pounds occasionally and ten pounds frequently; the claimant can sit for six hours, but must have the ability to alternate to standing for five minutes after every twenty-five minutes of sitting; the claimant can stand and/or walk for six hours, but must have the ability to alternate to sitting for five minutes after every twenty-five minutes of standing and/or walking; the claimant can push/pull as much as he can lift/carry; the claimant can operate hand controls with the right hand frequently; the claimant can handle items frequently with the right hand; the claimant can finger frequently with the right hand; the claimant can feel frequently on the right; the claimant can climb occasionally; the claimant can maintain balance over narrow, slippery, or erratically moving surfaces occasionally; the claimant can stoop, kneel, crouch, and crawl occasionally; the claimant can work at unprotected heights occasionally; and the claimant can work in close proximity to (i.e., within arm's reach of) dangerous moving mechanical parts occasionally.

(Tr. 15).

In fashioning this RFC, the ALJ considered the clinical evidence, medical

opinions, and Hajdarevic's activities of daily living. (Tr. 15-26). The ALJ first

engaged in a two-step process to evaluate Hajdarevic's alleged symptoms and found

that, although the claimant's medically determinable impairments could reasonably

be expected to cause his alleged symptoms, his statements concerning the intensity,

persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15-17).

In making this determination, the ALJ considered the longitudinal medical records and cast them against Hajdarevic's subjective statements. The ALJ summarized:

> As demonstrated by the discussion of the medical evidence above in this section, the claimant's allegations (via his function reports and testimony) are not borne out in the medical records to the extent that he alleged. Although treatment records showed evidence of the above-mentioned subjective complaints, these were disproportionate to the objective findings and the nature and course of treatment. Considering the claimant's allegations within the context of the treatment records, diagnostic imaging, and objective clinical findings discussed above, the undersigned finds that the claimant can perform the reduced range of light work identified above at finding five. This adequately accounts for the supported limitations from the combination of the claimant's severe medically determinable impairments. In reaching this determination, the undersigned has carefully considered the claimant's obesity, and has found no additional limitations beyond those identified in the above-defined residual functional capacity.

(Tr. 19).

The ALJ also considered the opinion evidence, finding the opinions of State agency consultants Dr. Park and Dr. Hooper and independent medical examiner Dr.

Baker that Hajdarevic was capable of light work persuasive. Conversely, the ALJ found the more restrictive opinions of Dr. Kneifati and PA-C Genga not persuasive.[3]

On this score, the ALJ found the opinion of Dr. Park generally persuasive, as it was largely supported by the available evidence at the time it was rendered and was otherwise largely consistent with the record as a whole, including contemporaneous and subsequent medical records. (Tr. 20). Nonetheless, the ALJ concluded that the expanded treatment records warranted slightly different limitations, including the ability to alternate from sitting/standing/walking due to positive slight leg raise findings and limitations in his ability to manipulate with his right hand due to additional treatment required for his right hand. (Id.)

The ALJ also found the opinion of Dr. Hooper generally persuasive for the same reasons, finding it consistent with the record as a whole and largely supported by the available evidence at the time it was rendered. (Tr. 20). However, the ALJ rejected the limitations on climbing ladders, ropes, and scaffolds, finding them inconsistent with the opinions of Dr. Park and Dr. Baker which were more

---

[3] The ALJ also addressed the persuasiveness of each of the treating physician's return-to-work notes summarized in footnote 2 above. For the sake of brevity, we do not summarize the ALJ's treatment of each of these opinions here, but simply note that he found none of these opinions entirely persuasive since they were merely temporary restrictions and lacked the specificity necessary to provide a function-by-function assessment of the plaintiff. (Tr. 21-24).

persuasive in terms of Hajdarevic's ability to perform all types of climbing. (Id.) The ALJ also provided for more restrictive limitations as outlined above due to expanded treatment records. (Id.)

The ALJ also considered the two opinions issued by Dr. Baker to be somewhat persuasive. As to Dr. Baker's February 2020 opinion, the ALJ found the opinion somewhat persuasive in that Dr. Baker had the opportunity to examine the plaintiff prior to rendering his opinion, but explained:

> Still, some limitations are overstated in light of his examination findings and are not adopted. For instance, there was no objective basis to limit the total amount of time that the claimant could sit, stand, and walk in an eight-hour workday, as Waddell's tests were negative, and the claimant showed 5/5 lower extremity strength. (Ex. 3F at 4). On the other hand, there was some indication of positive straight leg raise test, which as noted above in this decision was replicated at times when the claimant was evaluated by other medical providers. As such, although the undersigned finds that the total time the claimant can sit, stand, and walk in an eight-hour day is commensurate with the typical requirements associated with light work, I have included a limitation for alternating from sitting to standing and from standing and/or walking to sitting at the rate specified in the above-defined residual functional capacity at finding five.

> As for the use of the upper extremities for simple grasping, pushing, pulling and fine manipulation, the form provided to Dr. Baker did not really break these functions down in terms of degree. Frequent manipulative limitations (for the right upper extremity) as outlined in the residual functional capacity above at finding five are consistent with the objective clinical findings and course of the claimant's treatment discussed above in this section. However, although Dr. Baker limited the claimant to only occasional reaching above the shoulder, such a

> limitation is not supported by his examination of the claimant, which
> did not evaluate shoulder range of motion, and otherwise showed
> normal range of motion of the right elbow. (Ex. 3F at 3). Further, a
> limitation to only occasional reaching above the shoulder is not
> consistent with the remainder of the medical evidence of record, which
> did not reveal a medically determinable shoulder impairment. Finally,
> any limitations on foot controls (even to frequent use) are not
> warranted, given that electrodiagnostic testing of the claimant's lower
> extremities from August 2021 was negative.

(Tr. 22). The ALJ similarly found the August 2020 opinion of Dr. Baker somewhat

persuasive but declined to adopt some of the limitations for similar reasons as

explained above.

On the other hand, the ALJ did not find the opinions of Dr. Kneifati and PA-

C Genga, opining that Hajdarevic's impairments would limit him to less than

sedentary work, persuasive. The ALJ provided the following thorough evaluation of

Dr. Kneifati's opinion:

> The undersigned does not find this opinion persuasive. The limitations
> on lifting and/or carrying are not supported by his examination of the
> claimant, which showed 5/5 upper extremity strength, 80% grip
> strength on the right, and 100% grip strength on the left. (Ex. 16F at 5,
> 17). Further, such significant limitations on lifting/carrying are not
> consistent with other evidence in the file, including the prior
> administrative medical findings and the two opinions rendered by Dr.
> Baker, which are more persuasive in terms of their assessments of the
> claimant's ability to lift and/or carry.
>
> Likewise, limitations on standing and walking as outlined by Dr.
> Kneifati are not supported. Although Dr. Kneifati observed difficulty
> standing on heels/toes, an inability to walk on heels/toes, and some

25

difficulty with tandem walking, these findings were not routinely observed by other medical providers. (Ex. 16F at 4). Also, the claimant's lower extremity strength was intact at the time of the exam and largely intact throughout the remainder of the medical records, as discussed in more detail above in this decision. (Ex. 16F at 5). Limitations on the total amount of time the claimant could spend sitting are inconsistent with the prior administrative medical findings, which are more persuasive in that regard. Still, even though Dr, Kneifati found the claimant had a negative straight leg raise test, other providers found that this test was positive at times. As such, the undersigned finds that the claimant must have the ability to alternate positions as outlined in the residual functional capacity at finding five.

Limitations on foot controls are not supported by his examination of the claimant, which showed normal lower extremity strength, sensation, and reflexes. (Ex. 16F at 5). While the claimant did have some decreased range of motion of the left knee at the time of the examination, the record did not substantiate a medically determinable impairment in this regard. (Ex. 16F at 18). The limitations to frequent handling, fingering, and feeling on the right are consistent with his examination of the claimant and supported by the record as a whole, including the objective clinical findings and course of treatment discussed above in this section.

Dr. Kneifati's assessment of the claimant's ability to perform postural activities is generally in line with his examination of the claimant and other evidence in the record, excluding the limitations on climbing ladders or scaffolds, which are inconsistent with the postural limitations outlined in the prior administrative medical findings at the initial level of adjudication. Also, the environmental limitations identified by Dr. Kneifati are somewhat overstated. In that regard, the environmental limitations identified at the reconsideration level of adjudication are more persuasive. Dr. Kneifati's assessment regarding the claimant's inability to walk a block at a reasonable pace on rough or uneven surfaces is not supported by his finding that the claimant did not require an assistive device. Finally, his statement that the claimant could not use standard public transportation was seemingly based at least in part

26

upon his assessment that the claimant had poor balance, which again was not a significant finding routinely replicated throughout the remainder of the medical evidence of record.

(Tr. 24-25).

Similarly, the ALJ found the opinion of PA-C Genga not persuasive, noting that it was not entirely supported by her treatment notes or consistent with the record as a whole. Specifically, the ALJ noted no objective deficits in attention and concentration in the record, noted that limitations on sitting and standing at one time were more restrictive than those the claimant himself testified to, the limitations on walking at one time were overstated given he required no assistive device for ambulation and the total sit, stand, walk limitations were overstated since Genga did not observe any abnormal gait or other specific findings that would contribute to such significant limitations. (Tr. 26). The ALJ also found these extreme limitations in sitting, standing, and walking to be not supported by the other objective clinical findings of record. (Id.) Nonetheless, the ALJ did find Hajdarevic needed the ability to alternate between sitting, standing, and walking. (Id.) The ALJ also found Genga's limitations on twisting, stooping, crouching, and climbing ladders extreme given she did not assess his lumbar range of motion or strength and they were inconsistent with the other medical evidence. (Id.) Finally, the ALJ found the excessive breaks and absences opined by Genga were not born out in the medical evidence of record which

27

showed only mild to moderate abnormalities on diagnostic imaging, a routine and conservative course of treatment, and many normal exam findings. (Id.)

Having arrived at this RFC assessment, the ALJ concluded that Hajdarevic could not perform his past work but could engage in other tasks that existed in substantial numbers in the national economy. (Tr. 26-28). Accordingly, the ALJ concluded that Hajdarevic had not met the exacting standard necessary to secure Social Security benefits and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Hajdarevic argues that the ALJ failed to properly evaluate the opinion of Dr. Kneifati and committed multiple errors with symptom evaluation. In our view, the ALJ's decision was adequately articulated and supported by substantial evidence. Thus, for the reasons set forth below, we recommend the Court affirm the decision of the Commissioner.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record

and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration

when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C.  **Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security

claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and

supportability," which are the "same factors" that formed the foundation of the treating source rule. <u>Revisions to Rules</u>, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. <u>Id</u>. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). <u>Id</u>. at §§ 404.1520c(b)(3), 416.920c(b)(3).

<u>Andrew G. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, an ALJ must evaluate various medical opinions. Judicial review

of this aspect of ALJ decision-making is still guided by several settled legal tenets.

First, when presented with a disputed factual record, it is well-established that "[t]he

38

ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, and importantly in this case, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base

his RFC on a medical opinion from a physician is misguided." <u>Cummings</u>, 129

F.Supp.3d at 214–15.

### D.    Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

The interplay between the deferential substantive standard of review that

governs Social Security appeals, and the requirement that courts carefully assess

whether an ALJ has met the standards of articulation required by law, is also

illustrated by those cases which consider analysis of a claimant's reported pain.

When evaluating lay testimony regarding a claimant's reported degree of pain and

disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. <u>See Diaz v. Comm'r</u>, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir.1994) (citing *Stewart v. Sec'y of Health, Education and Welfare*, 714 F.2d 287, 290 (3d Cir.1983)); <u>see also Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)).

<u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 409 (3d Cir. 1979); accord <u>Snedeker v. Comm'r of Soc. Sec.</u>, 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

<u>McKean v. Colvin</u>, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings, but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the

individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–

3p. This includes but is not limited to medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019

43

WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), <u>report and recommendation adopted sub nom.</u> <u>Koppenhaver v. Berryhill</u>, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); <u>Martinez v. Colvin</u>, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

### E.    <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Hajdarevic retained the residual functional capacity to perform a range of light work with additional postural limitations. Therefore, we will affirm this decision.

The plaintiff first challenges the ALJ's rejection of the restrictive opinion of Dr. Kneifati finding Hajdarevic could perform less than sedentary work. On this

44

score, the ALJ adhered to the paradigm shift in in the manner in which medical opinions are evaluated when assessing Social Security claims. This new analytical model provides that "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' [ ] [and] [a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion." Andrew G. v. Comm'r of Soc. Sec. at *5 (citing 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2)). But ultimately, provided that the decision is accompanied by an adequate, articulated rationale, examining these factors, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight. Moreover, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009). Thus, our inquiry is not whether evidence existed from which the ALJ could have drawn a contrary conclusion, but rather whether substantial evidence existed in the record to support the ALJ's decision to credit or discredit each medical opinion, and whether the ALJ appropriately articulated his decision under the regulations. On this score, we find that, while the plaintiff argues there was some evidence from which the ALJ could have drawn a contrary conclusion, "[t]he presence of evidence in the

45

record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009).

So it is here. In the thorough analysis of Dr. Kneifati's opinion, the ALJ found it was both not supported by his own examination and inconsistent with the other evidence of record. Specifically, the ALJ found Dr. Kneifati's opinion that Hajdarevic could only occasionally lift and/or carry up to ten pounds was not supported by his examination findings of full upper extremity strength and intact grip strength and was inconsistent with the more persuasive opinions of Drs. Park, Hooper, and Baker, who all opined Hajdarevic could lift and/or carry up to twenty pounds occasionally. The plaintiff challenges the ALJ's supportability explanation as to this limitation, arguing that Dr. Kneifati's lift/carry limitation was based off his observation of limited range of motion in his lumbar spine and knees, poor balance, and tennis elbow, not grip strength. This argument ignores the purpose of the requirement that an ALJ address the factors of supportability and consistency, which is to explain how the ALJ assigned persuasive value to the opinion as a whole. Here, the ALJ explained that Dr. Kneifati's opinion was unsupported by his own examination in a number of ways, including not just his assessment of Hajdarevic's ability to lift and/or carry, but also with regard to his limitations on foot controls,

46

which were not supported by his findings of normal lower extremity strength, sensation, and reflexes, and his opinion that Hajdarevic could not walk a block at a reasonable pace on rough or uneven surfaces, which was not supported by his finding that the plaintiff did not require an assistive device. The ALJ also explained that Dr. Kneifati's limitations on standing and walking were not supported by the observed intact lower extremity strength both during the examination and elsewhere in the record and the lack of other evidence in the record that Hajdarevic had difficulty walking on his heels and toes.

More importantly, the ALJ found the opinion of Dr. Kneifati to be inconsistent with the three medical opinions he found to be most persuasive. In fact, with regard to Hajdarevic's ability to lift and/or carry, even the opinion of PA-C Genga, which found Hajdarevic to be severely limited on a number of other scores, concluded he could occasionally lift and carry ten to twenty pounds. (Tr. 1247).[4] Indeed, as we have explained, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight provided that the decision is accompanied by an adequate, articulated rationale. Here, while the plaintiff points

---

[4] The ALJ's conclusion that Hajdarevic could lift and/or carry at a light exertion level is also supported by his physical therapy records demonstrating that he had the ability to lift and carry twenty pounds occasionally. (Tr. 613, 618).

to other evidence in the record that could be considered consistent with the opinion of Dr. Kneifati, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009).

Hajdarevic's challenge to the ALJ's symptom evaluation is also unavailing. In conducting this assessment in it well-settled that:

> [A]n ALJ must conduct a two-step process in analyzing a claimant's pain or other symptoms. First, the ALJ must determine whether the claimant has "a medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms, such as pain." 20 C.F.R. § 404.1529(b). Second, when the record shows that the claimant has a "medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine how the symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). "In evaluating the intensity and persistence" of a claimant's symptoms, the ALJ considers "all of the available evidence" from "medical sources and nonmedical sources" to determine how the symptoms affect the claimant. (Id.).

Stancavage v. Saul, 469 F. Supp. 3d 311, 336–37 (M.D. Pa. 2020).

In the instant case, the ALJ's symptom evaluation followed this analytical paradigm. Considering Hajdarevic's self-reported activities, the clinical record, and the medical opinion evidence, the ALJ reasonably concluded that Hajdarevic's

symptoms were not wholly disabling.[5] While the plaintiff challenges the ALJ's consideration of his conservative treatment as a factor in assessing his symptoms, this is one of the seven relevant factors identified by the Social Security regulations which must aid in the ALJ's symptom analysis. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, while the plaintiff points to evidence in the record that support Hajdarevic's allegations, there is also substantial evidence in the record that supports the view that Hajdarevic's impairments were not wholly disabling. For example, while he testified he was unable to lift anything with his right hand, Dr. Kneifati's examination showed 80% grip strength in his right hand and intact hand and finger dexterity, (Tr. 1021), and Dr. Baker concluded that his right hand impairments had essentially resolved. (Tr. 1281). Nonetheless, the ALJ noted the continued treatment of his right hand and limited him to no more than frequent manipulation with his right hand. Further, Hajdarevic's own statements about his symptoms generally support the ALJ's assessment that much of his pain would be accounted for with a sit/stand option, since he testified that it was sitting, standing, and walking for extended periods that exacerbated his pain, (Tr. 86, 467), and he

---

[5] It is also worth noting that on one occasion Hajdarevic's physical therapist noted that Hajdarevic was "observed performing exercises appropriately, well-paced and without indication of pain when clinician was out of view, and when in view would alter form and display indications of pain." (Tr. 589).

stated in one of his function reports that he could walk up to one mile per day. (Tr. 428). Moreover, rather than wholesale adopting the opinions of Drs. Park, Hooper, and Baker that Hajdarevic could perform light work, the ALJ accounted for his pain symptoms and other abnormal examination findings including reduced range of motion and tenderness in the lumbar spine by electing a more restrictive RFC with a sit/stand/walk option.

To the extent that the plaintiff argues that this evaluation failed to adequately consider his work history, it is clear that:

> Although a claimant's work history is one of many factors the ALJ considers in assessing an individual's subjective complaints, 20 C.F.R. § 404.1529(c)(3), the ALJ is not required to equate a long work history with credibility. See Christl v. Astrue, 2008 WL 4425817, *12 (W.D.Pa. Sept.30, 2008). Thus, a claimant's work history alone is not dispositive of the question of . . . credibility.

Patton v. Astrue, No. CIV.A.08-205J, 2009 WL 2876715, at *3 (W.D. Pa. Sept. 8, 2009). Rather "[w]ork history 'is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints.'" Sanborn v. Colvin, No. CIV.A. 13-224, 2014 WL 3900878, at *16 (E.D. Pa. Aug. 11, 2014), aff'd sub nom. Sanborn v. Comm'r of Soc. Sec., 613 F. App'x 171 (3d Cir. 2015). In the instant case, given the substantial body of clinical, opinion, and anecdotal evidence supporting the ALJ's

decision, the ALJ was not obliged to reach a contrary conclusion based solely upon Hajdarevic's work history. There was no error here.

Finally, our independent review of the record supports the ALJ's decision in this case. Although the examination findings to which the ALJ cites are often inconsistent and equivocal, showing at times a normal gait and other times an antalgic gait, differing opinions on the limitations in Hajdarevic's right-hand impairment, and examination findings supporting the view of his providers that his chronic back pain "will be a lifelong struggle," and that his symptoms will wax and wane, (Tr. 1258), his treating providers repeatedly expressed that, while he would be unable to return to his past medium-to-heavy exertion level work, he was capable of light work and was only unable to return to his past employer because light work was unavailable. (Tr. 567), stating he has not been back to work because employer does not have light work for him; (Tr. 594), stating he was not working because his employer has no light duty; (Tr. 960), stating he was performing light duty at work but no light duty was currently available due to COVID-19; (Tr. 980), stating he had been given light duty but had been unable to do it since they do not have light duty where he works and there are layoffs due to COVID-19). In fact, in August 2020, Dr. Baker noted that light duty was not available at his place of employment but that "having his return to the workplace as soon as possible in a modified capacity is, in

my opinion, the most important factor in facilitating a full functional recovery." (Tr. 1283). In September 2020, another orthopedist, Dr. Grandrimo, opined that Hajdarevic had reached maximum medical improvement and could return to work with normal restrictions. (Tr. 1050).

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Therefore, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and affirm the decision of the Commissioner.

## IV.    **Conclusion**

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: April 3, 2025